UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CITY OF NEWARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| HYUNDAI MOTOR AMERICA, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| and | ) | |
| | ) | |
| KIA AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.  Plaintiff City of Newark is experiencing an epidemic of thefts of vehicles manufactured by Defendants Hyundai and Kia. These thefts are easily preventable, if only Defendants had installed industry-standard, anti-theft technology in their vehicles.

2.  Instead, Hyundai and Kia manufactured vehicles from 2011 to 2021 that lacked ignition immobilizers – basic, anti-theft technology that prevents a car from moving unless the matching, physical key is nearby – leaving their vehicles susceptible to theft with tools no more advanced than a USB cable.

3.  Since Hyundai and Kia's security failures were exposed in 2022, thefts of those vehicles have soared. In Newark, 1,178 Hyundais and 723 Kias were reported stolen in the first ten months of 2023—more than a **1000% increase** compared to the City's 2022 theft reports. Nearly twenty percent (20%) of the City's 3,618 registered Kias and 6,594 Hyundais were reported stolen during 2023. These thefts account for more than fifty-eight percent (58%) of all vehicles stolen in Newark.

4.      These vehicle thefts inherently endanger Newark citizens and heavily burden Newark's already-strained resources. Vehicle thefts are associated with reckless driving, reckless conduct, increased violence, and the depletion of scarce emergency resources. They also deprive the community of safe streets and sidewalks.

5.      For just one metric demonstrating how Kia and Hyundai's failures financially burden the City, the Newark Police Division was required to dedicate over 19,284 auto theft suppression overtime hours to address this car theft surge in the first ten months of 2023. That amounted to **over $1,093,219** in overtime cost, which is more than the yearly auto theft suppression overtime costs of 2021 and 2022 combined.

6.      In the face of these harmful impacts, Hyundai and Kia have done nothing. Instead of accepting responsibility for their harmful products through a recall or some other widespread repair program, the manufacturers instead have left it to vehicle owners and local law enforcement to address the problem. The thefts have continued essentially unabated.

7.      Hyundai and Kia's failure to equip their vehicles with ignition immobilizer devices gives rise to claims under New Jersey common law for public nuisance, negligence, fraud, and unjust enrichment; violation of the New Jersey Products Liability Act, N.J.S.A. 2A:58C et seq.; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.; and public nuisance pursuant to Newark Municipal Code 16:15 et seq. Newark seeks damages and other relief as outlined herein.

## JURISDICTION AND VENUE

8.      Under 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this dispute because the parties are diverse and the amount in controversy exceeds $75,000.

9.      The Court has personal jurisdiction over Defendants because the causes of action alleged in this Complaint arise out of each Defendants' transacting business in New Jersey,

contracting to supply services or goods in this state, causing tortious injury by an act or omission in this state, and because Defendants regularly do or solicit business, or engage in a persistent course of conduct or deriving substantial revenue from goods used or consumed or services rendered in New Jersey. Defendants have purposefully directed their actions towards New Jersey and/or have the requisite minimum contacts with New Jersey to satisfy any statutory or constitutional requirements for personal jurisdiction.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have agents, or transact their affairs in this District.

**PARTIES**

11. Plaintiff City of Newark is a municipal corporation organized under the laws of the State of New Jersey that may sue and plead in its own name.

12. Plaintiff is responsible for the public health, safety, and welfare of its citizens.

13. Plaintiff finds that Defendants' vehicles have created a serious public health and safety crisis, and the crisis constitutes a public nuisance.

14. Plaintiff directly and foreseeably sustained all economic damages alleged herein. Defendants' conduct has exacted a financial burden for which Plaintiff seeks relief. These damages have been suffered, and continue to be suffered, by Plaintiff.

15. Defendant Hyundai Motor America, Inc. is a manufacturer and distributor of new motor vehicles under the Hyundai brand; it is incorporated and headquartered in the state of California. Defendant Hyundai Motor America, Inc. distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through

a network of over 800 dealers throughout the United States, including Newark, from its headquarters in California.

16. Defendant Kia America, Inc. is a manufacturer and distributor of new motor vehicles under the Kia brand; it is incorporated and headquartered in the state of California. Defendant Kia America, Inc. distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of over 700 dealers throughout the United States, including Newark, from its headquarters in California.

**FACTUAL ALLEGATIONS**

*Defendants' vehicles lack ignition immobilizer technology.*

17. An immobilizer is "a standard anti-theft feature" that is present in "[m]ost vehicles made in the last 20 years."[1]

18. Immobilizer technology functions as an extra security check when an occupant starts a vehicle. It has been described as follows:

> Transponder chips are found in key fobs and smart keys. When you start the engine or have the key fob inside the automobile, these chips communicate a passcode to the car's immobilizer technology. If the pin code in the key fob meets the one in the immobilizer system, the vehicle will start. Otherwise, your automobile will not start.[2]

19. Immobilizers have been a common feature in vehicles since the 1990s; indeed, by that time, they had "proliferated" and were "ubiquitous."[3]

20. Other countries adopted immobilizers and made them mandatory features on vehicles; the EU mandated them in the late 1990s, and other countries followed suit. In those

---

[1] *What Is an Immobilizer and Does My Car Have One?*, (Dec. 23, 2021), https://www.makeuseof.com/what- is-an-immobilizer-does-my-car-have-one/.
[2] *Will an immobilizer save your car from being stolen?* (February 10, 2020), https://www.kaspersky.com/blog/36c3-immobilizers/.
[3] *Id.*

countries, "immobilizers contributed to a significant decrease in auto theft."[4]

21. In the United States, the absence of ignition immobilizers violates Federal Motor Vehicle Safety Standard 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor, and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 571.114 at S5.1.  By not installing immobilizer technology, Defendants made the vehicles capable of moving without the keys—a violation of the federal regulation.

### *Immobilizers defeat and frustrate vehicle thieves.*

22. Immobilizers are common standard equipment in vehicles because they are a critical tool in frustrating vehicle thefts—an effect that has been studied and documented for years.

23. In a series of studies, electronic immobilizers on vehicles "have been found to reduce theft of vehicle rates significantly."  Morgan et al., *Reducing criminal opportunity: vehicle security and vehicle crime*, Research Report, January 2016, at 87.  Indeed, it is "the device with the most evidence of effectiveness." *Id.*

24. According to the Highway Loss Data Institute (HLDI), "vehicle theft losses decreased significantly after factory-installed passive immobilizing antitheft devices were introduced."[5]

25. A different 2016 study found that the use of immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[6]

26. Thus, the absence of immobilizer technology inherently makes Defendants'

---

[4] *Id.*
[5] *Hyundai and Kia theft losses*, 39 HLDI Bulletin 28 (December 2021), https://www.iihs.org/media/.
[6] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter for Car Thieves*, 126 The Economic Journal 593, 1264, 1283 (June 2016).

vehicles particularly susceptible to theft.

### *Defendants' vehicles harm Newark.*

27. This phenomenon—the enhanced risk of theft—is playing out in Newark and other communities across the United States.

28. "Police across the country say Kia models newer than 2015 and Hyundai vehicles newer than 2012 are at risk" because the absence of an immobilizer allows thieves to steal Defendants' vehicles "using nothing more than a USB cord." According to law enforcement, the problem is that Defendants' vehicles do not have "immobilizing technology, which requires the engine to read a computer chip inside a key to start."[7]

29. Like other communities, Newark has seen a dramatic surge in the number of vehicle thefts attributable to the absence of immobilizer technology. In all of 2022, of the total 1,994 vehicles stolen in the City of Newark, 163 were Hyundais and 55 were Kias.

30. In the month of January 2023 alone, there were already over 105 thefts of Kia vehicles reported—nearly double of the entire 2022 total. Hyundai vehicles have seen a similar increase with over 50 of them reported stolen just in January 2023.

31. In 2023, 1,178 Hyundais and 723 Kias, a total of 1,901 vehicles, were reported stolen in the City of Newark—more than a 1000% increase compared to the total 2022 theft reports. That amounts to about 20% of the City's 3,618 registered Kias and about 18% of the City's 6,594 Hyundais being stolen this year.

32. The 2023 thefts substantially dwarf the 2022 thefts and account for more than 58% of vehicles stolen in Newark. At their current pace, the thefts of Kias and Hyundais in Newark will greatly surpass the number of all vehicles stolen in 2022.

---

[7] *Ignition design makes Hyundais and Kias easy to steal with USB cords*, (July 26, 2022), https://www.ksdk.com/article/news/investigations/ignition-design-hyundais-kias-easy-steal-usb-cord/.

33. The problem is not isolated to Newark. In 2019, 1,207 Kias and Hyundais were stolen in Missouri. In 2022, "that number soared to 6,120." In just the latter six months of 2022, the pace of thefts jumped by 288%.[8] Likewise, in Chicago, Illinois, thefts of Kias and Hyundais surged from about 500 in the first half of 2022 to more than 8,350 during the second half of the year and continue to comprise more than half of all vehicles stolen in Chicago in 2023.[9]

34. Indeed, the theft epidemic has escalated so quickly that major insurance companies will no longer provide new coverage to Hyundai and Kia vehicles that lack the immobilizer technology—a step that was necessary "to protect our policyholders and our business."[10]

35. The absence of immobilizing technology and the correlating theft of vehicles manufactured by Defendants creates a significant public safety problem for Newark. In fact, in 2023, 74 stolen Kias and Hyundais were used in violent crimes committed in Newark, including shootings and robberies. In 2023, the Newark Police Division has already dedicated over 19,284 auto theft suppression overtime hours to address this car theft surge, which has amounted to over $1,093,219.69 in overtime cost. This is more than the combined auto theft suppression overtime cost of 2021 and 2022, and more than a 1772.77% increase compared to 2020's overtime cost of $58,374.51.

36. The federal government also recognizes that "stolen cars constitute a major hazard to life and limb on the highways" because, in part, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death

---

[8] *Is your car where you left it? Kia and Hyundai thefts in Missouri have skyrocketed*¸ (Feb. 6, 2023), https://www.kcur.org/news/2023-02-06/is-you-car-where-you-left-it-kia-and-hyundai-thefts-in-missouri-have-skyrocketed.
[9] Available at https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2023/august/SuitAgainstAutomakersKiaAndHyundai.html
[10] *State Farm Says It Has Stopped Insuring Some Kia, Hyundai Vehicles* (Jan. 31, 2023), https://www.cbsnews.com/news/state-farm-progressive-kia-hyundai-auto-insurance/.

than those which are driven by authorized individuals." 33 Fed. Reg. 6,471 (April 27, 1968).

37. New Jersey Attorney General Matthew Platkin, along with a bipartisan group of 22 other Attorneys General, sent a letter to Defendants stating:

> Alarmingly high rates of thefts of these vehicles have been sustained over a long period of time. Your consumers continue to be harmed as a result, and worse yet, the thefts contribute to an erosion of public safety as they are frequently accompanied by reckless driving and the commission of other crimes, further endangering our communities.

Letter of 23 State Attorneys General to Hyundai and Kia (March 20, 2023).[11]

38. Simply put, "[t]hese thefts often result in more than simple property crimes." *Id.*

39. Getting no response from Defendants, a group of eighteen Attorneys General renewed the alarm surrounding Defendants' vehicles and asked the National Highway Traffic Safety Administration to issue a recall of Defendants' vehicles.[12]

40. Thus, there can be no doubt that a proliferation of vehicle thefts—thefts made significantly easier because of the defect in Defendants' vehicles—endangers Newark citizens and threatens the public welfare.

***Defendants know of harms and refuse to act.***

41. Despite widespread reports of these harms to vehicle owners and communities across the country, including Newark, Defendants have refused to act.

42. Defendants were contemporaneously aware of their lack of industry-standard immobilizing technology and have vowed to include it on model years 2022 and later.[13]

43. Similarly, since at least mid-2021, Defendants have known about the

---

[11] Available at https://www.doj.state.wi.us/sites/default/files/news-media/AG%20Letter%20to%20Hyundia%20and%20Kia%20final.pdf.
[12] Available at https://portal.ct.gov/-/media/AG/Press_Releases/2023/AG-Multistate-Letter-to-NHTSA- 4202023.pdf.
[13] *Lawsuit claims flaw in Kia and Hyundai vehicles allow them to be stolen with just a USB cord*, (Jul. 28, 2022), https://www.kmbc.com/article/lawsuit-flaw-kia-hyundias-stolen-usb-cord/40747875.

surging number of thefts of their vehicles.[14]

44. Despite being aware of the preventable harms they were causing, Defendants have done nothing to meaningfully address the problem.

45. Defendants have offered a security kit for vehicle owners, but it (a) does not assist owners who have already had their vehicle stolen (nor does it assist Newark, which has already dealt with the ramifications of those thefts), and (b) costs vehicle owners $170 (not including the cost of installation)—a barrier to adoption that guarantees the problem will continue.[15]

46. To the extent Defendants have announced a potential software upgrade, many other details concerning that "fix" are unclear, including whether (a) the upgrade will be implemented via a formal vehicle recall; (b) how owners will learn about the availability of the upgrade; and (c) which models will be eligible for the recall. And again, this "remedy" does nothing for consumers and communities already impacted by the rash of thefts.

47. Defendants announced a software upgrade that became available in February 2023, but thefts are largely unabated. According to a recent article, "[m]ore than three months later, the automakers are far from putting the problem behind them." Sean McLain, *Kia, Hyundai Thefts Continue Three Months After Carmakers Deployed Fix*, The Wall Street Journal, May 30, 2023.[18] As of early May 2023, only 7% of the roughly 8 million eligible vehicles in the United States have received the software upgrade, and even those with the upgrade are still susceptible to break-ins because of the ubiquity of the problem. *Id.* The news report further noted that "the automakers' decision not to issue a safety recall on the cars—despite pressure

---

[14] *Hyundai and Kia Refuse St. Louis Mayor's Demand to Install Anti-theft Technology* (Sept. 22, 2022), https://www.ksdk.com/article/news/crime/hyundai-kia-refuse-st-louis-demand-install-anti-theft-technology/.
[15] *Hyundai Charging Customers $170 for a Kit to Protect Its Easy-to-Steal Cars*, (Oct. 1, 2022), https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/.

9

from some states—could complicate the effort," and the manufacturers' decision not to issue a recall "means fewer owners would become aware of the free software fix." *Id*.

48. Thus, even in the face of soaring thefts that harm vehicle owners and communities across the country, Defendants have failed to act or take any meaningful steps to remedy the problem.

49. Left with no other choice, Newark initiates this litigation to abate the public nuisance presented by Defendants' vehicles.

## FIRST CAUSE OF ACTION
### Public Nuisance
### Brought by Newark Against All Defendants

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

51. Each Defendant's conduct, both individually and collectively, in manufacturing, selling, and refusing to fix the vehicles at issue constitutes a public nuisance pursuant to the New Jersey common law.

52. The conduct of each Defendant involves a significant interference with public health, public safety, public peace, and public comfort. In particular, the knowing omission of industry-standard, anti-theft technology—even after years of notice and requests for abatement—constitutes a hazard to the public health, safety, welfare, and comfort of Newark citizens.

53. Each Defendant's conduct giving rise to the vehicle theft crisis is of a continuing nature and has produced a permanent or long-lasting effect that has a significant effect on the entire community.

54. Defendants' interference with the public health, the public safety, the public

peace, and the public welfare has resulted in significant harm to Plaintiff.

55. Each Defendant acted knowingly, or was substantially certain, that its conduct would result in the public nuisance and significant harm complained of herein. And, the conduct of each Defendant, either individually or collectively, was a substantial factor in producing and then maintaining the public nuisance complained of herein.

56. Each Defendant's conduct in causing the public nuisance complained of herein was unreasonable and the gravity of the harm caused far outweighs any utility of the Defendant's conduct.

57. Moreover, each Defendant's refusal to act to abate the nuisance constitutes continuing unreasonable conduct.

58. Each Defendant's conduct damaged, and continues to damage, Newark in an amount to be determined at trial.

59. Newark seeks monetary and injunctive relief to halt the threat of future harm.

### SECOND CAUSE OF ACTION
### Negligence
### Brought by Newark Against All Defendants

60. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

61. Defendants have a duty to exercise reasonable care in the design, manufacture, sale, and distribution of their vehicles.

62. Reasonable care includes equipping vehicles with basic, common technology that can deter and prevent threats to public safety.

63. Defendants, acting individually and together, were negligent in failing to equip their vehicles with immobilizer technology.

64. Defendants' acts and omissions imposed an unreasonable risk of harm to others separately and/or combined with the improper or unlawful acts of third parties.

65. As a proximate result of the Defendants' breach of their duties of care, Defendants damaged and continue to damage Newark in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Fraud
### Brought by Newark Against All Defendants

66. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

67. Defendants knew or believed that their cars did not have industry-standard anti-theft technology from 2011 to 2021.  Nonetheless, Defendants represented to Plaintiff and its citizens that their cars were safe.

68. Defendants intentionally suppressed the fact that their cars' anti-theft technology was not comparable to conventional industry standards or compliant with federal regulations.

69. As a proximate result of the Defendants' intentional and material omissions and misstatements of fact, Defendants damaged and continue to damage Newark in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Unjust Enrichment
### Brought by Newark Against All Defendants

70. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

71. As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from the cost-savings realized in failing to equip their vehicles with immobilizer technology.

72. Unjust enrichment arises not only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss.

73. Plaintiff has expended substantial amounts of money in an effort to remedy or mitigate the harms caused by Defendants' conduct, and Plaintiff anticipates those costs will only increase as the problem continues without a solution.

74. These expenditures include the provision of law enforcement services and other public safety resources to address the theft epidemic.

75. These expenditures have helped sustain Defendants' businesses, and they have been necessary only because Defendants continue to refuse to act to address the problem.

76. Plaintiff has conferred a benefit upon Defendants by paying for Defendants' externalities: the cost of the harms caused by Defendants' conduct.

77. Defendants are aware of these obvious benefits, and their retention of the benefit is unjust.

78. Defendants have unjustly retained benefits to the detriment of Plaintiff, and Defendants' retention of such benefits violates the fundamental principles of justice, equity, and good conscience.

79. Defendants' misconduct alleged in this case is ongoing and persistent.

80. Plaintiff seeks an order compelling Defendants to disgorge all unjust enrichment to Plaintiff.

## FIFTH CAUSE OF ACTION
### Violation of the New Jersey Products Liability Act, N.J.S.A. 2A:58C et seq.
### Brought by Newark Against All Defendants

81. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

82. Under N.J.S.A. 2A:58C-2, a manufacturer is strictly liable in New Jersey for manufacturing a product causing harm when the product was not "reasonably fit, suitable or safe for its intended purpose because it . . . (b) failed to contain adequate warnings or instructions, or (c) was designed in a defective manner."

83. Defendants' vehicles were designed defectively because they failed to contain industry-standard, anti-theft technology. Defendants also failed to provide consumers adequate warnings about their lack of anti-theft technology.

84. Defendants are strictly liable for the resources Plaintiff has had to expend to contain the car theft epidemic caused by Defendants' knowingly defective products.

**SIXTH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act,**
**N.J.S.A. 56:8-1 et seq.**
**Brought by Newark Against All Defendants**

85. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

86. The New Jersey Consumer Fraud Act prohibits "[a]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-1.

87. Defendants knew that their cars did not have industry-standard, anti-theft technology from 2011 to 2021. Nonetheless, Defendants represented to Plaintiff and its citizens that their cars were safe.

88. Defendants intentionally suppressed the fact that their cars' anti-theft technology was not comparable to conventional industry standards or compliant with federal regulations.

89. As a proximate result of the Defendants' intentional and material omissions and misstatements of fact, Defendants damaged and continue to damage Newark in an amount to be determined at trial.

90. Due to Defendant's fraud on its consumers, Plaintiff is entitled to treble damages, costs, and attorney fees.

## SEVENTH CAUSE OF ACTION
### Violation of Newark Municipal Public Nuisance Code, NMC 16:15-4
### Brought by Newark Against All Defendants

91. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

92. Newark Municipal Code section 16:15 outlaws, among others in a non-inclusive list, "any matter, thing, condition or act" which (a) "is or may become detrimental or a menace to the health of the inhabitants of this municipality" or (b) "may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality."

93. Defendants knowing omission of industry-standard, anti-theft technology in its cars has created a car theft epidemic in Newark. Each Defendant's conduct, both individually and collectively, in manufacturing, selling, and refusing to fix the vehicles at issue constitutes a public nuisance pursuant to Newark Municipal code 16:15.

94. In particular, the knowing omission of industry-standard, anti-theft technology—even after years of notice and requests for abatement—constitutes a hazard to the public health, safety, welfare, and comfort of Newark citizens.

95. Each Defendant's conduct giving rise to the vehicle theft crisis is of a continuing nature and has produced a permanent or long-lasting effect that has a significant effect on the entire community.

96. Defendants' interference with the public health, the public safety, the public peace, and the public welfare has resulted in significant harm to Plaintiff.

97. Each Defendant acted knowingly, or was substantially certain, that its conduct would result in the public nuisance and significant harm complained of herein. And, the conduct of each Defendant, either individually or collectively, was a substantial factor in producing and then maintaining the public nuisance complained of herein.

98. Each Defendant's conduct in causing the public nuisance complained of herein was unreasonable and the gravity of the harm caused far outweighs any utility of the Defendant's conduct.

99. Moreover, each Defendant's refusal to act to abate the nuisance constitutes continuing unreasonable conduct.

100. Each Defendant's conduct damaged, and continues to damage, Newark in an amount to be determined at trial.

## PRAYER FOR RELIEF

101. Newark respectfully requests that this Court enter judgment granting all relief requested in this Complaint, and/or allowed at law or in equity, including:

    a. abatement of the nuisance;

    b. actual damages;

    c. punitive damages;

    d. exemplary damages;

    e. disgorgement of unjust enrichment;

    f. forfeiture, disgorgement, restitution and/or divestiture of proceeds and assets;

    g. attorneys' fees;

    h.   costs and expenses of suit; and

    i.   pre- and post-judgment interest.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED: January 16, 2024                Respectfully submitted,

                                              */s/ Rachel E. Simon*
                                    Rachel E. Simon, Esq.
                                    Raymond M. Brown, Esq.
                                    **PASHMAN STEIN WALDER HAYDEN PC**
                                    21 Main St., Suite 200
                                    Hackensack, NJ 07601
                                    201-488-8200
                                    rsimon@pashmanstein.com

                                              --and--

                                        */s/ Kenyatta K. Stewart*
                                    Kenyatta K. Stewart, Esq.
                                    Corporation Counsel
                                    **CITY OF NEWARK LAW DEPARTMENT**
                                    920 Broad St., Room 316
                                    Newark, NJ 07102
                                    973-733-3880
                                    stewartk@ci.newark.nj.us

                                    *Attorneys for Plaintiff City of Newark*